**TENNESSEE VALLEY AUTHORITY, Appellant,**

v.

**ATLAS MACHINE & IRON WORKS, INC. and Williams Enterprises, Inc., Defendants.**

**In re FIREMAN'S FUND INSURANCE COMPANY, Appellee.**

**No. 85–2405.**

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1986.

Decided Oct. 21, 1986.

Robert E. Washburn (Herbert S. Sanger, Jr., Gen. Counsel, Tennessee Valley Authority, Justin M. Schwamm, Sr., Asst. Gen. Counsel, Knoxville, Tenn., on brief), for appellant.

Thomas H. McGrail (Thompson, Larson, McGrail, O'Donnell & Harding, Washington, D.C., on brief), for appellee.

Before HALL, MURNAGHAN and SPROUSE, Circuit Judges.

MURNAGHAN, Circuit Judge:

The Tennessee Valley Authority's appeal presents the question whether an appellant's obligation under a supersedeas bond, given to stay execution of a judgment pending appeal, is either (1) excused when the opposing party cross-appeals or (2) discharged when the court of appeals affirms as to liability but remands for a new trial as to damages.

## I.

In a prior opinion, we dealt with a dispute over two construction contracts awarded in 1978 by the Tennessee Valley Authority (TVA) to Atlas Machine & Iron Works, Inc. *Tennessee Valley Authority v. Atlas Machine & Iron Works, Inc.,* 734 F.2d 12 (4th Cir., 1984). Under the terms of the two contracts, Atlas agreed to construct and deliver steel embedments to be used in steam tunnels and drywells at nuclear power reactors in Tennessee. Deliveries of the components were initially scheduled to begin on March 1, 1979 and end on March 17, 1981. Problems during construction arose from two sources. On the one hand, the fabrication sequence recommended by TVA for the steam tunnel components was new and previously untested. After initial failures in construction, the parties had to revise the specifications, because the initial specifications rendered the tunnel unbuildable. On the other hand, Atlas repeatedly failed to meet its delivery schedules, and much of its work was of poor quality. Despite Atlas' repeated assurances that both the timeliness and the quality of its work would improve, Atlas apparently ceased work on the steel components in June 1980. By December 1980, TVA inspectors reported that Atlas had in effect abandoned the contracts, and in February 1981 TVA terminated the contracts.

TVA then filed the present action, seeking equitable replevin of materials in Atlas' possession, and damages for breach of contract. On March 2, 1981, the district court upheld TVA's equitable claim and issued an injunction. Atlas then counterclaimed,

alleging that TVA's termination of the contracts was unjustified and therefore amounted to a breach, and that, in any event, TVA had given a warranty that its steam tunnel specifications would be adequate, and that the defective specifications therefore constituted a breach of warranty which rendered TVA liable for restitution of Atlas' costs. Trial of the liability and damages issues was bifurcated. The liability phase of the trial was held in August 1981, and the district court issued a memorandum and order resolving the liability issues on January 22, 1982. The district court concluded that Atlas had breached the contracts by its late deliveries and unacceptable workmanship. TVA's termination of the contracts was therefore justified, and TVA was entitled to damages. At the same time, the district court concluded that TVA's defective specifications breached its implied warranty of the sufficiency and efficacy of those specifications. The district court therefore held that Atlas was entitled to recover unspecified costs related to the steam tunnel components.

The damages trial was held in August 1982 and the district court issued a Memorandum and Order as to damages on April 14, 1983. The court found that TVA's damages due to Atlas' breach amounted to $1,956,834.18. On the other hand, the court found that Atlas was entitled to costs due to the defective specifications in the amount of $1,097,567.20. The court also found that Atlas was entitled to an unpaid balance due on the contract of $658,966.76. Subtracting these amounts from the damages owed to TVA, the court awarded TVA a net judgment of $200,300.22. On May 24, 1983, the district court issued an amended order correcting its earlier mathematical calculations and deducting the amount of a salvage credit due Atlas, which resulted in the reduction of TVA's net recovery to $182,500.22.

On May 12, 1983, before the district court issued its amended order, Atlas filed a notice of appeal. On June 8, 1983, Atlas obtained a stay of execution of the district court's judgment pending appeal, pursuant to Fed.R.Civ.P. 62(d), by giving a supersedeas bond in the amount of $200,300.20.[1] The terms of the bond were negotiated and agreed to by Atlas and TVA. Fireman's Fund Insurance Company agreed to serve as surety on the bond after Atlas furnished it with full collateral in the form of certificates of deposit totalling $200,300.20. Subsequently, on June 20, 1983, TVA filed a notice of its cross-appeal of the district court's judgment.

On appeal, this court affirmed the district court's conclusions as to the liability of both parties. *Tennessee Valley Authority v. Atlas Machine & Iron Works, Inc.*, 734 F.2d 12 (4th Cir., 1984). However, we completely vacated the district court's findings and conclusions as to damages. We held that the district court erred in allowing Atlas to recover, as damages for the defective steam tunnel specifications, its total costs from the project, rather than only the costs actually caused by the defective specifications. We also held that the district court had erroneously allowed Atlas a double recovery for the unbilled work in progress. As to the rest of the vacated damages findings, we simply stated that "a second consideration at the district court level would be advisable." *Id.* at 10.

On remand before a new judge,[2] the district court conducted a second damages trial. On January 11, 1985, the district court issued a Memorandum and Order awarding $3,330,258.41 in damages to TVA and $1,437,600.04 in damages to Atlas, for a net award to TVA of $1,892,658.37.

Prior to the issuance of the district court's order on remand, Atlas took two steps which significantly affected its ability to pay any judgment ultimately rendered in

---

1. The bond was intended to be in the amount of the initial, unamended judgment. Through an inadvertent error, however, the bond was actually given in an amount two cents less than the amount of the judgment.

2. The original bifurcated trial had been conducted by Judge Oren Lewis. On remand, after Judge Lewis' death, the retrial was held before Judge Albert Bryan.

favor of TVA. First, on April 18, 1984, Atlas entered into an agreement with Bethlehem Steel, one of its secured creditors, for the orderly liquidation of all of Atlas' assets. Apparently, Atlas' assets were in fact liquidated according to that agreement. However, Atlas did not notify either TVA or the district court of this liquidation until after the issuance of the district court's order in January 1985. Second, on June 7, 1984, Atlas' counsel wrote to Fireman's Fund, suggesting that the supersedeas bond had been either voided or discharged due to the court of appeals' vacation of the initial damages judgment, and asking for the return of the $200,300.20 deposited as collateral for the bond. Fireman's Fund subsequently returned the collateral to Atlas.

Upon learning of Atlas' inability to pay any part of the new judgment, TVA wrote to Fireman's Fund demanding payment of the amount of the supersedeas bond. Fireman's Fund refused to pay in a letter dated June 19, 1985.

TVA then moved in the district court, pursuant to Fed.R.Civ.P. 65.1, for enforcement of the bond. The district court denied the motion, and TVA now appeals from that denial. Fireman's Fund responds that it is not liable for two reasons: (1) because TVA, by taking its own appeal, lost its right to enforce the original judgment and rendered supererogatory the supersedeas bond; (2) because, under the terms of the supersedeas bond itself, the obligations of both principal and surety had been discharged when the court of appeals vacated the original judgment.

## II.

Fireman's Fund argues, first, that the supersedeas bond became superfluous when TVA filed its cross-appeal, because the cross-appeal in itself prevented TVA from executing the district court's judgment. Fireman's Fund then concludes that its obligation under the bond was excused when the bond was rendered superfluous.

Fireman's Fund is correct in contending that TVA's filing of a cross-appeal deprived TVA of the right to execute the original judgment even in the absence of a supersedeas bond. Where the prevailing party in the lower court appeals from that court's judgment, the appeal suspends the execution of the decree. *Bronson v. La Crosse R.R. Co.*, 68 U.S. (1 Wall.) 405, 410, 17 L.Ed. 616 (1863); *Price v. Franklin Investment Co.*, 574 F.2d 594, 597 (D.C.Cir. 1978); *Luther v. United States*, 225 F.2d 495, 497 (10th Cir.1955). Moreover, where the prevailing party is the first to take an appeal, no supersedeas bond can be required of the losing party when it subsequently files its own appeal, because the execution of the judgment has already been superseded by the prevailing party's appeal. *Bronson v. La Crosse R.R. Co.*, 68 U.S. (1. Wall.) at 410, 17 L.Ed. 616.[3]

However, Fireman's Fund can point to no authority to support its conclusion that where the losing party is the first to appeal and a supersedeas bond is properly required, the appellant's obligations under that bond are excused when the prevailing party subsequently files a cross-appeal. On the contrary, the Fifth Circuit implicitly rejected that view in *Aviation Credit Corporation v. Conner Air Lines*, 307 F.2d 685 (5th Cir.1962), where it enforced a supersedeas bond filed by an appellant despite the fact that the appellee had taken a cross-appeal. While no explanation for the court's ruling is forthcoming in its opinion, we are satisfied as to the correctness of its result. Had Atlas filed the bond as part of a bargained-for exchange, receiving in return TVA's promise not to execute the district court's judgment, Fireman's Fund might perhaps be entitled to argue that its obligation was excused because TVA's filing of a cross-appeal deprived Atlas of consideration or frustrated its purpose. Those contract-law doctrines are inapplicable

**3.** Thus, if TVA had filed its appeal first, Atlas would not have been obliged to give a supersedeas bond. However, because Atlas, the losing party in the district court, was in fact the first to take an appeal, a supersedeas bond was properly required.

here, however, where the bond was given, not as part of a bargained-for exchange, but pursuant to the requirements of Fed.R. Civ.P. 62(d). Moreover, to hold the bond vacated by the cross-appeal would have put TVA to an untenable choice of either taking a $200,300.20 bird in the hand or, with a substantial degree of probability, losing any recovery altogether, although it was fully vindicated in its conclusion that the damages award had been very substantially understated.

### III.

Fireman's Fund argues further that, even if its obligation under the bond was not excused by TVA's cross-appeal, that obligation was discharged when this court vacated the district court's original damages award on the previous appeal. Fireman's Fund contends that it could be held liable on the bond only if this court had substantially affirmed the original judgment.

■ No federal statute or provision of the Federal Rules of Civil Procedure or the Federal Rules of Appellate Procedure defines the conditions that must occur to trigger an appellant's obligation under a supersedeas bond. *See Moore v. Townsend*, 577 F.2d 424, 426 n. 5 (7th Cir.1978); 11 Wright & Miller, *Federal Practice and Procedure* § 2905 (1973).[4] Instead, the extent of the appellant's liability is governed by the terms of the bond itself. *Aviation Credit Corp. v. Conner Air Lines, Inc.*, 307 F.2d 685, 688 (5th Cir.1962). The relevant language of the bond at issue here is as follows:

Now if the said appellant shall pay to the said appellee all costs and damages that shall be adjudged against said appellant on said appeal, and shall also satisfy or perform the said judgment or order appealed from in case it shall be affirmed and any judgment or order which the Court of Appeals may render or order to be rendered by the District Court, not exceeding in amount or value the original judgment or order, and all rents of, or damages to property during the pendency of the appeal out of the possession of which the appellee is kept by reason of the appeal, then this obligation to be void, otherwise to be and remain in full force and virtue.

■ Fireman's Fund correctly points out that our disposition of the prior appeal discharged certain obligations provided for in the bond. Because the original judgment was not affirmed, neither the appellant nor its surety could be required to satisfy that judgment out of the bond. Nor could the bond be used to pay "costs and damages that shall be adjudged against the appellant on said appeal," because no such costs or damages were awarded.

However, the bond went on to require satisfaction of "any judgment or order which the Court of Appeals may ... order to be rendered by the District Court, not exceeding in amount or value the original judgment or order." We, on the initial appeal, ordered the district court to render a new judgment as to damages. To the extent of $200,300.20, it did not exceed in amount or value the original order by the district court from which the appeal had been taken.

Our interpretation of the language of the bond finds support in the line of cases decided under former statutes and rules governing the scope of liability under supersedeas bonds. Although those statutes and rules are no longer in effect, they provide a framework within which the language of a bond may be usefully evaluated. *Tully v. Kerguen*, 304 F.Supp. 1225, 1227 (D.V.I.1969); 11 Wright & Miller, *Federal Practice & Procedures* § 2905 at 327

---

**4.** Fed.R.Civ.P. 62(d) deals only with the procedure to be followed in filing a supersedeas bond. The rule provides:

(d) *Stay Upon Appeal.* When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

(1973). Prior to the enactment of the Federal Rules of Civil Procedure, an appellant's obligation under a supersedeas bond was governed by statute. Section 22 of the Judiciary Act of 1789, 1 Stat. 73, 85, provided that the party who gave the bond remained obligated under it unless he "prosecute[d] his writ to effect," and he was liable to pay on the bond "if he fail to make his plea good." *See Kountze v. Omaha Hotel Co.*, 107 U.S. 378, 381, 2 S.Ct. 911, 914, 27 L.Ed. 609 (1882). In 1878, this provision was revised and codified as § 1000 of the Revised Statutes (2d ed.). The revised version provided that the supersedeas bond would secure the judgment unless "the plaintiff in error or the appellant shall prosecute his writ to effect, and, if he fail to make his plea good, shall answer all damages and costs...." Cases decided under these statutes held that an appellant was not discharged from his obligation under a supersedeas bond unless he won a substantial reversal of the lower court's judgment. *Crane v. Buckley*, 203 U.S. 441, 446–47, 27 S.Ct. 56, 57–58, 51 L.Ed. 260 (1906); *Gay v. Parpart*, 101 U.S. 391, 392, 11 Otto 391, 25 L.Ed. 841 (1879).

From 1938 to 1968, supersedeas bonds were governed by former Rule 73(d) of the Federal Rules of Civil Procedure.[5] Former Rule 73(d) provided that an appellant would be liable under a supersedeas bond

> for the satisfaction of the judgment in full together with costs, interests, and damages for delay, if for any reason the appeal is dismissed or the judgment is affirmed, and to satisfy in full such modification of the judgment and such costs, interest and damages as the appellate court may adjudge and award.

Cases decided under former Rule 73(d) generally held that an appellant remained obligated under a supersedeas bond unless his appeal had resulted in a reversal on the issue of his liability to the appellee. Thus, a partial reversal as to one of two appellants did not affect the bond obligation of the appellant whose liability was affirmed. *Scholz Homes, Inc. v. Larson*, 437 F.2d 1060 (7th Cir.1971). Nor was an appellant freed from his bond where his appeal had resulted in the reversal of the dismissal of his counterclaim, but his liability on the plaintiff's claim against him had been affirmed. *Rector v. Massachusetts Bonding & Insurance Co.*, 191 F.2d 329 (D.C.Cir. 1951). Of particular interest, for the purposes of the present case, are two Fifth Circuit cases enforcing supersedeas bonds against parties whose appeals had led to the affirmance of their liability, with a reversal and remand limited to the redetermination of damages. *Aviation Credit Corp. v. Conner Air Lines, Inc.*, 307 F.2d 685 (5th Cir.1962); *Franklinville Realty Co. v. Arnold Construction Co.*, 132 F.2d 828 (5th Cir.1943).

Because the previous appeal resulted in an affirmance of Atlas' liability and a remand solely for a redetermination of damages, we conclude that Atlas and its surety, Fireman's Fund, remained liable under the terms of the supersedeas bond. We accordingly reverse the district court's order and remand to direct entry of an order directing Fireman's Fund to pay to TVA the sum of $200,300.20, with interest accruing from June 8, 1983, the date of the filing of the bond and the stay of execution of the original judgment.

REVERSED.

---

5. Rule 73(d) was rescinded in 1968 when the Federal Rules of Appellate Procedure were adopted. The Appellate Rules, however, contain no provision concerning supersedeas bonds. *See* 11 Wright & Miller, *Federal Practice & Procedure* § 2905 at 327 (1973).