BEATRICE FOODS CO.,
Plaintiff–Appellee,

v.

NEW ENGLAND PRINTING AND LI-
THOGRAPHING COMPANY and Fed-
eral Insurance Co., Defendants–Appel-
lants.

No. 90–1459.

United States Court of Appeals,
Federal Circuit.

April 22, 1991.

James B. Muskal, of Leydig, Voit & Mayer, Chicago, Ill., argued, for plaintiff-appellee. With him on the brief was Richard M. Johnson.

Thomas L. Shriner, Jr., of Foley & Lardner, Milwaukee, Wis., argued, for defendant-appellant New England Printing and Lithographing Co. With him on the brief were Richard M. Esenberg and James L. Huston. Of counsel were Theodore W. Anderson, Michael O. Warnecke, Deborah Schavey Ruff, and John M. Augustyn, of Neuman, Williams, Anderson & Olson, Chicago, Ill.

Lawrence G. Rosenthal, of Pepe & Hazard, Hartford, Conn., argued, for defendant-appellant Federal Ins. Co.

Before MARKEY and ARCHER, Circuit Judges, and FRIEDMAN, Senior Circuit Judge.

ARCHER, Circuit Judge.

New England Printing and Lithographing Company (New England) and Federal Insurance Co. (Federal) appeal the decision of the United States District Court for the District of Connecticut, No. CV B–80–335 (July 3, 1990), ordering Federal to pay Webcraft Technologies, Inc.[1] (Webcraft) $44 million in partial satisfaction of the judgment entered in favor of Webcraft. Federal contends here that the supersedeas bond, which it issued pending New England's appeal of the district court's initial damage award, expired when this court vacated the award and remanded the case to the district court to recompute damages. We affirm.

I

In 1984, in the liability phase of a bifurcated trial, the district court found that New England had infringed three Webcraft patents relating to the production of certain multi-page pamphlets with an integral envelope. On appeal this court affirmed that decision. *Beatrice Foods v. New England Printing*, 758 F.2d 668 (Fed.Cir.1984) (Table) (*Beatrice I*). On July 11, 1988, in the damage phase, the district court held that Webcraft was entitled to a compensatory award equal to New England's total revenues from infringing products, $22,107,837.69, plus pre-judgment interest. Damages were set at this level because New England's destruction of its sales records made a more accurate determination of damages impossible. In accordance with Rule 62(d), Fed.R.Civ.P.,[2] the court stayed collection of the judgment, pending appeal, when the supersedeas bond for $42,500,000.00 was posted by New England.[3]

On appeal, this court affirmed the trial court's decision in part, vacated it in part, and remanded the case to the trial court. *Beatrice Foods v. New England Printing*, 899 F.2d 1171, 14 USPQ2d 1020 (Fed.Cir. 1990) (*Beatrice II*) (*in banc*). As pertinent here, we held that the district court did not have the discretion to equate New England's gross sales with Webcraft's damages from lost profits. We therefore vacated the damage award and remanded for a proper computation of damages. *Id.* at 1176, 14 USPQ2d at 1024.

On remand the trial judge recomputed the damage award, setting damages at

---

**1.** Beatrice Foods Co. originally brought the suit on behalf of Webcraft Packaging Co., which was a division of Beatrice at that time. This division, which later became a subsidiary under the name Webcraft Technologies, Inc., is the real party in interest.

**2.** Rule 62(d) reads:

When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

**3.** Before the $42.5 million bond was issued, Federal had already issued a $1.5 million bond as a *quid pro quo* for Webcraft's agreement not to join The Journal Company, New England's parent, as a co-defendant. There is no question that the $1.5 million bond was intended to last through all proceedings. A rider which combined the two bonds indicates that the terms of the bonds were to remain separate. Thus, in this appeal, we only consider the district court's order executing on the $42.5 million bond.

$25,339,529.88 plus pre-judgment interest.[4] The district court ordered New England to increase the supersedeas bond to $52 million if it wanted to continue to stay the judgment pending a further appeal. New England chose not to post the additional bond, and the district court thereafter ordered Federal to pay $44 million to Webcraft.

New England and Federal now appeal that order. They contend that, by the terms of the bond as well as the practice of the federal courts, the bond was in effect through the appeal of the damage award to this court, and that the bond expired when this court in *Beatrice II* vacated the district court's damage award and remanded the case for a proper computation of damages.

## II

The interpretation of a bond's terms, like any other contract, is a matter of law; thus, our review is de novo. *See Government Systems Advisors, Inc. v. United States,* 847 F.2d 811, 812 n. 1 (Fed. Cir.1988). The interpretation of a bond agreement, however, is a unique task. While the parties' intent is controlling, much of the language in the bond is likely to be boilerplate, with portions dating back more than a century. Cases interpreting past bond agreements must be considered, for they almost certainly influenced the language the bonding company chose.

The purpose of requiring a supersedeas bond to be posted is to preserve the status quo while protecting the non-appealing party's rights pending appeal. *Poplar Grove Planting & Refining Co., Inc. v. Bache Halsey Stuart, Inc.,* 600 F.2d 1189, 1190–91 (5th Cir.1979). No federal statute, provision of the Federal Rules of Civil Procedure, or provision of the Federal Rules of Appellate Procedure defines the conditions that trigger a surety's obligation under a supersedeas bond. *Tennessee Valley*

*Auth. v. Atlas Mach. & Iron Works, Inc.,* 803 F.2d 794, 798 (4th Cir.1986) (*citing Moore v. Townsend,* 577 F.2d 424, 426 n. 5 (7th Cir.1978); 11 Wright & Miller, *Federal Practice and Procedure* § 2905 (1973)). The terms of an appeal bond determine the extent to which the surety on the bond is bound. *Aetna Casualty & Sur. Co. v. LaSalle Pump & Supply Co., Inc.,* 804 F.2d 315, 317 (5th Cir.1986). The Supreme Court, however, has made it clear that

> the obligation of sureties upon bonds in [sic, is] *strictissimi juris,* and not to be extended by implication or enlarged construction of the terms of the contract entered into.

*Crane v. Buckley,* 203 U.S. 441, 447, 27 S.Ct. 56, 58, 51 L.Ed. 260 (1906).

We turn then to the language of the bond agreement, which reads:

> NOW, THEREFORE, the condition of this obligation is such that if the Principal shall prosecute this appeal to effect and satisfy any judgment, penalty, and costs, including costs of this appeal as may be rendered in this case, then this obligation shall be null and void, otherwise to remain in full force and effect.

Not surprisingly, the parties offer different interpretations of the 54 words in this sentence. Federal and New England contend that the surety was only obligated to pay if any one of three circumstances occurred: (1) New England failed to prosecute the appeal to effect; (2) the court of appeals affirmed the award of damages; or (3) the court of appeals rendered the award of a certain sum. Webcraft, on the other hand, argues that the surety was obligated to pay *unless* two conditions were met: (1) New England prosecuted the appeal to effect; and (2) New England satisfied any judgment, penalty, or costs rendered in the case.

---

**4.** This new judgment was the subject of a separate appeal, *Beatrice Foods v. New England Printing,* 923 F.2d 1576, 17 USPQ2d 1553 (Fed. Cir.1991) (*Beatrice III*), where this court upheld the district court's award of $8,446,509.96 in compensatory damages, while vacating its award of $16,893,019.92 in enhanced damages.

*Id.* at 1581, 17 USPQ2d at 1556. We remanded the case for the calculation of pre-judgment interest and for consideration by the district court of whether New England acted in bad faith during the post-judgment proceedings. *Id.,* at 1582, 17 USPQ2d at 1557.

Thus, the parties are in agreement that the surety remains liable if New England has failed to prosecute the appeal "to effect." This language is very old. Its meaning was already well established in 1879 when Chief Justice Waite explained:

If, on the final disposition of a writ of error or appeal, the judgment or decree brought under review is not substantially reversed, it is affirmed and the writ of error or appeal has not been prosecuted with effect.

*Gay v. Parpart,* 101 U.S. 391, 392, 25 L.Ed. 841 (1879). Twenty-seven years later, the Supreme Court explained further

What is meant by prosecuting his appeal to effect? It is an expression substantially equivalent to prosecuting his appeal with success; to make substantial and prevailing his attempt to reverse the decree or judgment awarded against him.

*Crane,* 203 U.S. at 447, 27 S.Ct. at 58.

We must answer the narrow question of whether our decision in *Beatrice II,* affirming in part, vacating in part, and remanding, gave New England a "substantial" enough victory that it met the bond's condition of prosecuting the appeal to effect. The interpretation of supersedeas bonds is not a task unique to the patent field, thus we apply the law of the regional circuit from which this case originated. *Panduit v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 223 USPQ 465 (1984). There is no relevant precedent from the Second Circuit; however, we will consider the law of other circuits in reaching our decision.

In *Franklinville Realty Co. v. Arnold Constr. Co.,* 132 F.2d 828 (5th Cir.1943), the Fifth Circuit ruled that the surety remained bound after a previous appeal resulted in the vacation of the district court's damage award. While the language of the bond does not appear in the case, the court explained that

the judgment on the former appeal was not a judgment of reversal but one of affirmance with a reversal limited to taking evidence and obtaining findings ... upon whether the judgment it had obtained should be for the same or a less sum.

*Id.* at 829. Then, in *Neeley v. Bankers Trust Co. of Texas,* 848 F.2d 658 (5th Cir. 1988), the court held that when an appeal results in an order for a retrial on damages the appellant has prosecuted the appeal "to effect." The court distinguished *Franklinville;* in *Neeley* the entire award of money damages was vacated, and the plaintiff had to prove his damages on remand, while the *Franklinville* court merely remanded for the district court to recalculate damages. *Id.* at 660. As Federal notes in its brief, the bond in *Neeley* was very similar to the bond issued by Federal in this case.

In *Tennessee Valley,* 803 F.2d 794, the Fourth Circuit faced facts similar to those in *Neeley.* On a previous appeal the court had affirmed the district court's conclusions as to liability, while completely vacating the district court's findings and conclusions as to damages. *Id.* at 796. On remand, the trial judge held a second damages trial. *Id.* After reviewing the history of supersedeas bonds, the *Tennessee Valley* court held that the insurance company remained liable "[b]ecause the previous appeal resulted in an affirmance of Atlas' liability and a remand solely for a redetermination of damages." *Id.* at 799.

The bond in *Tennessee Valley* did not contain the requirement that the appellant pursue the appeal "to effect." It did, however, require that the appellant pay "all costs and damages that shall be adjudged against said appellant on said appeal." *Id.* at 798. Apparently the Fourth Circuit found this language similar to that requiring prosecution "to effect;" it cited the *Crane, Gay,* and *Franklinville* cases and discussed the "to effect" language while resolving the insurance company's duty under the bond. *Id.* at 799.

The District of Columbia Circuit reached a similar conclusion in *Rector v. Massachusetts Bonding & Ins. Co.,* 191 F.2d 329 (D.C.Cir.1951). In the district court, the plaintiff obtained a judgment against the defendant, while the defendant's counterclaim was denied. *Id.* at 330. The defendant filed a supersedeas bond to secure the judgment. On appeal the plaintiff's judg-

ment was affirmed, but the denial of the counterclaim was reversed and the case was remanded for trial of the counterclaim. *Id.* The court ruled

> We do not think the need for evidence to determine the amount to be deducted from a principal claim should relieve either principal or surety of liability.

*Id.* at 333. The bond here, as in *Tennessee Valley*, did not contain the "to effect" language, *id.* at 331 n. 4; however, the court apparently found equivalent language. The court quoted *Franklinville*, and discussed appellant's success in the first appeal in terms of the "effect" the first appeal had on the judgment. *Id.* at 331–32.

■ Therefore, the regional circuits agree that the surety remains liable when the question on remand is not whether a party will receive damages, but merely how the damages will be calculated. There is no reason to think that the Second Circuit would not adopt this approach because it seems to best implement the goals of Rule 62(d). If, after an appeal, there remains a question of whether *any* compensable harm was done, then the bond may be allowed to lapse. When the plaintiff has yet to prove any damages, it is unnecessary and unfair to ask the defendant to continue to provide a bond to ensure that money will be available should damages be proven. An appeal has been prosecuted to effect, then, when appellee must still prove on remand that he suffered a compensable harm.

■ Conversely, when an appellee has proven that damages are due, and the remand is merely to determine the proper quantum of injury, then it is not unreasonable that the bond remain effective during this recalculation period. Put another way, when an appellant has merely succeeded in having the case remanded for recomputation of damages, it would be a stretch to say that the appeal was "substantially" successful, or that the judgment was "substantially" reversed. *See Crane*, 203 U.S. at 446–47, 27 S.Ct. at 57–58.

In *Beatrice II* we affirmed the district court's conclusion that New England's infringing sales amounted to $22,107,837.69,

while reversing the court's calculation of damages payable to Webcraft. *Beatrice II*, 899 F.2d at 1176, 14 USPQ2d at 1024. We also rejected New England's urging that damages be assessed at a reasonable royalty rate. *Id.* at 1173, 14 USPQ2d at 1022. Clearly, New England was not challenging the fact that damages were due, but merely how much the damages would be. Thus, Webcraft had proven that damages were due; the case was remanded merely for the proper computation of those damages. *Id.* at 1176, 14 USPQ2d at 1024. Because the appeal had not been prosecuted to effect, the bond was, by its own terms, still enforceable when the district court ordered Federal to pay $44 million to Webcraft.

### III

Federal also challenges the district court's order enforcing the bond on the ground that it was denied due process by the district court. Federal argues that it did not receive either (1) notice, or (2) an opportunity to be heard.

■ A. Federal argues that it was denied notice because the district court did not follow Rule 65.1, Fed.R.Civ.P., which requires notice to a surety when a motion to execute a surety's bond is filed with the court. On June 22, 1990, New England filed a motion requesting that the court notify Federal that Webcraft was attempting to execute the $42.5 million bond. The district court denied New England's motion because the court had already sent notice to the surety on June 15, in response to Webcraft's motion to enforce the surety bond. Federal admits receipt of the notice on June 22. Federal was not denied due process for failure to receive duplicative notice. The demands of due process may be met with *"notice reasonably calculated, under all the circumstances, to appraise interested parties of the pendency of the action* and afford them an opportunity to present their objections." *Greene v. Lindsey*, 456 U.S. 444, 449–50, 102 S.Ct. 1874, 1877–78, 72 L.Ed.2d 249 (1982) (quoting *Mullane v. Central Hanover Bank &*

*Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)) (emphasis in original). Federal received such notice.

 B. Next, Federal argues that the district court allowed Webcraft to execute the bond before Federal had an opportunity to be heard. Federal contends that the Rules of the United States District Court for the District of Connecticut (the local rules) guaranteed it twenty-one days within which to file a memorandum opposing Webcraft's motion to execute on the bond.[5] The court ruled on Webcraft's motion 18 days after it was filed. Federal cites *Management Investors v. United Mine Workers of America*, 610 F.2d 384 (6th Cir.1979), to support its due process claim. In *Management Investors* the district court had granted a two-day old motion for summary judgment, though the local rules guaranteed a party five days to respond after a motion was filed. *Id.* at 389. The Sixth Circuit held that while the district court denied the plaintiff its right to oppose the motion, the error was harmless. The court stated:

> Ordinarily, our finding here would require that we reverse and remand this cause in order that the plaintiff might be permitted an opportunity to properly oppose the motion. But as *the question presented here is purely one of law*, we go on to decide it. And while we do not approve of the district court's conduct, our review of pertinent law persuades us that the error committed here was harmless.

*Id.* at 390 (emphasis added).

We need not reach the question of whether Federal was denied its due process right to be heard, for here, as in *Management Investors*, the district court's conclusion was legal in nature. Based on this court's review of the substantive issues, we are convinced that if the district court committed any error, it was harmless.

## IV

We conclude, for the reasons stated, that Federal remained liable on the supersedeas bond following the decision of this court in *Beatrice II* and that the district court did not err in ordering execution on that bond in its order dated July 3, 1990.[6]

AFFIRMED.

---

**5.** The rule states:

Unless otherwise ordered by the Court, all memoranda in opposition to any motion shall be filed within twenty-one (21) days of the filing of the motion, and shall indicate in the lower margin of the first page of such memorandum whether oral argument is requested.

**6.** As previously noted, *see supra* n. 4, the judgment of the district court on which that order was based has subsequently been substantially modified by this court's decision in *Beatrice III*, which, of course, will necessitate that the district court revisit that order and establish Federal's liability on the bond under this decision and the decision in *Beatrice III*.