983 F.2d 1056
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
IN RE: Mae C. KABBOUL, Debtor.
Frederick D. Greco, Trustee, Plaintiff-Appellee,
v.
First Commercial Bank, Defendant-Appellant.
 No. 92-1286.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 1, 1992
Decided: January 7, 1993
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.
 Joseph Edward Bankert, BANKERT & NORAIR, P.C., for Appellant.
 Frederick D. Greco, for Appellee.
 Bryan H. Guidash, BANKERT & NORAIR, P.C., for Appellant.
 E.D.Va.
 VACATED AND REMANDED.
 Before HALL, NIEMEYER, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 First Commercial Bank ("FCB") appeals the order of the district court releasing its appeal bond to the appellee. We vacate and remand.
 
 I.
 
 2
 Verne Lafferty, a Pennsylvania resident, died leaving a will that left a piece of commercial property in Gainesville, Virginia, to Mae Kabboul. The will was attacked on the grounds that Kabboul exercised undue influence over Lafferty. On May 24, 1989, the will was declared invalid by the Court of Common Pleas of Northumberland County, Pennsylvania. This order was appealed by Kabboul. The Pennsylvania court proceedings provide the backdrop for the instant case.
 
 
 3
 The Gainesville property is subject to at least two deeds of trust. Frederick Greco is the trustee on the first trust deed, and FCB holds the second trust deed. Greco sought to foreclose, and a sale was set for June 9, 1990. FCB, however, filed an involuntary bankruptcy petition against Kabboul on June 6, 1990, in the Eastern District of Virginia. The automatic stay provision, 11 U.S.C. § 362, halted the foreclosure sale. For the next year and a half, FCB countered every one of Greco's attempts to consummate the foreclosure. Greco was ultimately allowed to foreclose, and we are now confronted with an issue of FCB's liability on its appeal bond for delaying the foreclosure.
 
 
 4
 Greco's first response to the automatic stay was a motion to lift the stay or for adequate protection. The bankruptcy court refused to lift the stay, but ordered FCB to make tax and insurance payments on the property, as well as continued payments under the first deed of trust.
 
 
 5
 Soon thereafter, the Lafferty estate also moved to lift the stay or, alternatively, to dismiss the property from the bankruptcy. The basis for the motion was the then-extant ruling of the Pennsylvania court that the Lafferty will (under which Kabboul claimed ownership of the property) was invalid. These motions were also denied.
 
 
 6
 On December 26, 1990, Greco again moved for an order lifting the stay, assigning as grounds that FCB had failed to pay $12,000 in property taxes that had come due three weeks earlier. The bankruptcy court, stating that it wished to withhold a ruling until the Pennsylvania appeal was decided, enjoined Greco from foreclosing on the property. The bankruptcy court also reversed its earlier ruling and stated that FCB did not have to make tax, insurance and mortgage payments. Greco appealed this order to the district court. On May 17, 1991, the district court ruled that the property was not part of Kabboul's bankruptcy estate, and, therefore, the automatic stay did not apply; accordingly, the injunction against foreclosure was dissolved. Greco was momentarily free to pursue the foreclosure.
 
 
 7
 Now it was FCB's turn to appeal. FCB first moved for an order from the district court to stay that court's order pending FCB's appeal to the Fourth Circuit. The district court granted the stay, conditioned on the posting of a $25,000 bond by FCB. One week later, on June 7, 1991, the stay order was modified to permit Greco to manage the property,[1] to collect rents, and to apply rents toward taxes and bills.[12] FCB posted the required bond, Greco began to manage the property, and the case moved to the appeals court.
 
 
 8
 Thus, as of June 7, 1991, four different courts were involved in different aspects of litigation involving the Gainesville property: the Pennsylvania state appellate court was considering the validity of the Lafferty will; the bankruptcy court presumably continued to deal with the Kabboul bankruptcy; the district court held the $25,000 appeal bond posted by FCB; and this court had before it FCB's appeal of the district court's ruling that allowing Greco to foreclose on the property (which ruling was stayed). The Pennsylvania appeal was decided on July 25, 1991; the Lafferty will was declared to be invalid. As a consequence, the sole basis for Kabboul's claim to the Gainesville property was extinguished. On September 23, 1991, the bankruptcy court dismissed the Kabboul bankruptcy case altogether, and on Greco's unopposed motion, FCB's then-pending appeal before this court was dismissed as moot. Greco v. First Commercial Bank, No. 91-1611 (4th Cir. Jan. 14, 1991) (order).
 
 
 9
 One loose end remained. The $25,000 appeal bond posted by FCB back in June, 1991, was still in the hands of the clerk of the district court. FCB filed a motion for release of the bond, claiming that Greco had "no compensable injuries generated by or as a result of any delay caused by the appeal." Greco countered with a motion requesting that the bond be disbursed "to be used for payment of existing real estate taxes that are presently due on said property." Greco's motion mentions several types of delay damages, including $28,261.34 in real estate taxes that had allegedly come due between May 31, 1991 (stay granted) and January 14, 1991 (appeal dismissed). Attached as exhibits to Greco's motion were copies of bills for improvements, insurance, repairs, ordinary upkeep, and utilities.
 
 
 10
 The district court conducted a hearing on the bond motions on February 7, 1992. Greco explained that he felt his duty was to maximize the property's value; to this end, he made the management decision to forego payment of taxes and to authorize certain repairs in order to induce GSA to renew its lease. FCB complained that Greco had failed to demonstrate that all of the expenses were necessary, and that there was no evidence of what amount had been received from or was owed by the tenant. The court granted Greco's motion for disbursement of the bond to him, stating from the bench that"I'm not going to require him to put on any evidence as to the amount of his damages. That's the purpose of the bond, to cover that." At a hearing three weeks later on FCB's motion for reconsideration, the court clarified its previous ruling to state that the real estate taxes alone exceeded $25,000 and that this amount alone justified payment of the entire bond to Greco. FCB appeals these orders.
 
 II.
 
 11
 Bankruptcy Rule 8017(b) provides that "[a] bond or other security may be required as a condition to the grant or continuation of a stay of a judgment." The terms of an appeal bond itself define the conditions under which the bond may be disbursed. Tennessee Valley Authority v. Atlas Mach. & Iron Works, 803 F.2d 794 (4th Cir. 1986). The terms of FCB's bond, however, provide little guidance: "For the reasons stated in open court, it is accordingly ORDERED: (1) that the Motion to Stay Order Pending Appeal filed by First Commercial Bank is GRANTED, on condition that First Commercial Bank post a bond in the amount of $25,000.00, cash or corporate surety." The "reasons stated in open court" were that any delay in permitting Greco to foreclose might injure the holder of the first deed of trust.[3] FCB concedes that Grego is entitled to recover under the bond for delay damages. FCB's complaint is that Greco made an inadequate showing on the question of what damages were properly deemed a result of delay occasioned by FCB's appeal.
 
 
 12
 The evidence was indeed sketchy. In his motion for release of the bond, Greco asserts that GSA owed $19,462.79 "for the part of the cost of living expenses and real estate taxes due under the lease," but he did not explain whether this amount is in addition to the monthly rental due under the lease. Elsewhere in the same motion, Greco states "[t]hat since taking over management of said building there has not been any money available to pay real estate taxes." GSA was obligated to pay more than $6,600 as rent per month, yet we are not told whether these amounts (more than $52,000), were ever paid or, if so, to whom. In an earlier pleading (which was attached as an exhibit to his bond-disbursement motion), Greco stated that GSA had, "as of October 1, 1990, ... paid $26,1003.52[sic] to the Lafferty estate, ... $41,921.97 for maintenance and repair, and [it] was holding $3,759.19." As evidence of his expenditures, a handwritten ledger and a "recap of expenses" were attached as exhibits; according to Greco, expenses for upkeep and improvements totalled $52,832.36. Moreover, although the district court held that the taxes accrued during the eight-month period "certainly ... exceed the $25,000," prorating the annual tax bill yields only about $18,000 attributable to the eightmonth delay.
 
 
 13
 The district court's explanation from the bench of the legal factors involved in a bond-release matter is sound. In the absence of a current statute or rule on point, courts look to former statutes and rules to fashion a framework for interpreting bond language. Tennessee Valley, 803 F.2d at 798. Former Rule 73(d) of the Federal Rules of Civil Procedure provided that an appellant would be liable under a supersedeas bond for, among other things, "damages for delay." Damages for delay were described in Omaha Hotel Co. v. Kountz, 107 U.S. 378, 392 (1883):
 
 
 14
 (1) the depreciation of the property in market value pending the appeal; or (2) its deterioration by waste, or want of repair, or the accumulation of taxes or other burdens; or (3) the use and deterioration of the property pending the appeal, that is, the rents and profits; or (4) the nonpayment of the costs of the appeal.
 
 
 15
 Reasonable expenses incurred by Greco to preserve the property's value are recoverable under this standard.
 
 
 16
 Greco bears the burden of proving that the additional expenses were the "natural and proximate result of the stay." Moore v. Townsend, 577 F.2d 424, 427 (7th Cir. 1978). If the district court determines that Greco was free to foreclose at some date prior to the dismissal of the appeal, then perhaps the period of delay should be reduced. Moreover, the district court must look at both sides of the ledger.[4] Amounts owed or paid by GSA should be factored into the analysis of what "damages a[rose] from the delay occasioned by [the stay pending appeal]...." Kountze, 107 U.S. at 394.
 
 
 17
 We vacate the order of the district court and remand with instructions to conduct further proceedings consistent with our opinion.
 
 VACATED AND REMANDED
 
 
 [1]
 Under state law, Greco would have been entitled to advance money for the purposes of "keep[ing] the improvements on the property in tenantable condition" and preventing waste; amounts so advanced become part of the debt secured by the deed of trust. Va. Code Ann.s 55-59 (Michie 1986)
 
 
 [2]
 The General Services Administration (GSA) was the sole lessee on the property. GSA owed approximately $6,600 per month in rent in 1991. Greco sought to manage the property in order to halt the deterioration of the property and insure that GSA would renew the lease in January, 1992. The lease was renewed in January, 1992, at a monthly rental of $7,241.75
 
 
 [3]
 In ruling from the bench, the district court merely stated that the bond would be required because of the time necessary for appellate review and "to cover some expenses, if any, in the event Mr. Greco prevails." Technically, no one "prevailed;" the appeal was dismissed as moot. FCB does not contend that this disposition of the appeal precludes the recovery of delay damages
 
 
 [4]
 According to FCB, the foreclosure sale occurred on April 23, 1992. Appellant's Brief at 18. On remand, the district court should be able to factor in the sale price in its determination of delay damages