No. 01-574

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 43

SPOONER CONSTRUCTION & TREE SERVICE, INC.,

      Plaintiff and Appellant,

   v.

ERNIE MANER d/b/a NORTHWEST SOFT TRACKS,

      Defendant and Respondent.


APPEAL FROM:    District Court of the Fourth Judicial District,
                      In and for the County of Missoula, Cause No. DV-96-82775,
                      The Honorable John W. Larson, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

           Martin J. Elison, Attorney at Law, Missoula, Montana

      For Respondent:

           Christian T. Nygren, Milodragovich, Dale, Steinbrenner & Binney, P.C.,
           Missoula, Montana


                     Submitted on Briefs:  July 18, 2002

                            Decided:   March 11, 2003

Filed:

_____
                         Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1     We previously reviewed this matter in *Spooner Const. & Tree Service v. Maner*, 2000 MT 161, 300 Mont. 268, 3 P.3d 641 (*Spooner I*).  In *Spooner I,* we concluded that the District Court for the Fourth Judicial District in Missoula County erred when it granted the Respondent, Ernie Maner, summary judgment and awarded damages for supervisory work and wrongful attachment.  The judgment of the District Court was affirmed in part, reversed in part, and the matter was remanded for further proceedings.  A hearing was conducted to resolve the issues remanded.  The District Court concluded that the Appellant, Spooner Construction & Tree Service, Inc., wrongfully attached Maner's property and awarded attorney's fees and consequential damages, and concluded there was insufficient evidence to prove damages for supervisory work.  Spooner appeals the District Court's  award of damages for wrongful attachment.  We affirm the judgment of the District Court.

¶2     We restate the issues as follows:

¶3     1. Did the District Court err when it denied Spooner's motion to dismiss?

¶4     2. Was the District Court clearly erroneous when it found that Spooner wrongfully and maliciously attached Maner's skidder?

¶5     3. Does a supersedeas bond remain in effect when the case is remanded to the district court following a successful appeal?

FACTUAL AND PROCEDURAL BACKGROUND

¶6     The following facts are taken, in part, from our prior decision in *Spooner I* and, in part, from the hearings conducted by the District Court following our remand for further

2

proceedings.

¶7    In the fall of 1995, Spooner Construction & Tree Service, Inc., through its president James Spooner, entered into an oral agreement with Ernie Maner to harvest timber pursuant to Maner's Big Cat timber contract with Plum Creek. Spooner and Maner both agreed to provide fifty percent of the labor and equipment for the harvest in exchange for an equal share of the profits.

¶8    During the timber harvest, Maner's skidder broke down and it was taken to Spooner's shop for repairs. Maner continued to harvest timber using Spooner's 1450B Case Crawler. Meanwhile, the necessary parts were ordered and the skidder was repaired. However, by the time the repairs were complete, winter had arrived and Maner was forced to cease work until spring. Spooner contends that its mechanic repaired the skidder while Maner maintains he made the repairs himself.

¶9    Maner made payments to Spooner for hauling timber harvested pursuant to the Plum Creek agreement in October and December of 1995. On February 6, 1996, Spooner filed a mechanic's lien against Maner's skidder, trailer, and bus for repair work allegedly performed on the skidder and for shop rental. Spooner claimed Maner could not be located for personal service and, therefore, notice of the lien and sheriff's sale was published in the newspaper. Spooner intended to purchase the skidder at the sale.

¶10    Robert Skiles, one of Maner's business associates, brought the lien and sheriff's sale to Maner's attention after seeing the notice in the paper. On March 15, 1996, Maner filed a complaint in justice court to stop the sheriff's sale, to regain possession of his personal

3

property, and to obtain payment for work he had performed for Spooner based on a separate agreement (the September contract).

¶11 On the same date, Spooner filed a complaint in district court in which it alleged that it was entitled to compensation for work performed pursuant to the Plum Creek agreement, for the use of the Crawler, and for repairs performed on Maner's skidder. Ancillary to the complaint, Spooner requested a writ of prejudgment attachment of Maner's skidder, trailer, and bus which were at Spooner's shop. The writ was issued by the District Court that day.

¶12 On May 7, 1996, Maner filed an answer and counterclaim to Spooner's complaint. He alleged that Spooner breached the Plum Creek agreement, failed to pay him for skidding and supervisory work done pursuant to the September contract, and wrongfully attached his personal property.

¶13 On May 13, 1996, Spooner agreed to dismiss the prejudgment attachment issued by the District Court. Spooner recognized that Maner would be damaged if deprived of the use of his equipment, however, it admitted no wrongdoing. The District Court discharged the writ of prejudgment attachment two days later.

¶14 Maner served Spooner with interrogatories, requests for admission, and requests for the production of documents on December 16, 1996. Spooner was requested to admit that: (1) Maner was entitled to damages for skidding pursuant to the September contract; (2) **Spooner** was entitled to damages for the supervisory work he performed pursuant to the September contract; (3) **Maner** obtained a writ of prejudgment attachment maliciously and without probable cause; (4) Spooner had received all of the money he was entitled to

4

pursuant to the Plum Creek agreement; and (5) Spooner was not entitled to any money from Maner for the use of its Crawler. Spooner did not respond and the requests were deemed admitted.

¶15 Maner moved for partial summary judgment on Spooner's claim for damages arising from the Plum Creek agreement, Maner's use of the Crawler, and punitive damages. Maner also sought partial summary judgment on his claim that he was entitled to money for skidding and sawing timber, and for the supervisory work he performed pursuant to the September agreement. A hearing was held on May 28, 1997, at which time Spooner filed a motion for leave to file discovery responses. Spooner's motion was denied and partial summary judgment was awarded to Maner. As the basis for its judgment, the District Court amended admission number two, *sua sponte*, to state that **Maner** rather than "Spooner" was entitled to damages for supervisory work.

¶16 On March 31, 1998, Maner filed for partial summary judgment on his claim of wrongful attachment, his claim for breach of the Plum Creek agreement, and Spooner's claim for damages related to repair work performed on the skidder. The District Court held a hearing on May 29, 1998, after which it awarded Maner summary judgment on all issues. As the basis for that award, the District Court amended admission number three, *sua sponte*, to state that **Spooner** rather than "Maner" maliciously attached Maner's skidder.

¶17 On February 16, 1999, the District Court conducted a non-jury trial on the issue of damages. The District Court entered its Findings of Fact, Conclusions of Law, and Judgment and Order on April 2, 1999, which awarded Maner $82,600 for consequential damages plus

attorney's fees and costs for the wrongful attachment claim.

¶18 Spooner posted a supersedeas bond and appealed the judgment of the District Court. We concluded that the District Court abused its discretion when it denied Spooner the opportunity to respond to the amended requests for admission. It was further held that the District Court erred when it awarded summary judgment in favor of Maner based on the facts deemed admitted in response to requests two and three. We affirmed in part, reversed in part, and remanded the issues of supervisory work and wrongful attachment to the District Court.

¶19 On May 7 and 8, 2001, the District Court conducted a non-jury hearing on the remanded issues. After Maner presented his evidence, Spooner made an oral motion to dismiss which was denied. The District Court entered its Findings of Fact, Conclusions of Law, and Judgment and Order on June 21, 2001. The court found insufficient evidence to establish that Maner was entitled to damages for supervisory work performed pursuant to the September contract and concluded that Spooner's claim for repair work was without merit. However, the District Court found that Spooner had wrongfully and maliciously attached Maner's skidder and concluded Maner was entitled to consequential damages in the amount of $82,600, plus attorney's fees and costs.

STANDARD OF REVIEW

¶20 A motion to dismiss is construed in a light most favorable to the nonmoving party and should not be granted unless the nonmoving party cannot prove a set of facts in support of its claim which would entitle it to relief. *Cardneaux v. Cardneaux*, 1998 MT 256, ¶ 7, 291

6

Mont. 230, ¶ 7, 967 P.2d 410, ¶ 7. A district court's conclusions of law are reviewed to determine whether they are correct. *Albrecht v. Albrecht,* 2002 MT 227, ¶ 8, 311 Mont. 412, ¶ 8, __ P.3d __, ¶ 8.

¶21 We review a district court's findings of fact to determine if the findings are clearly erroneous. *Albrecht,* ¶ 8. A finding of fact is clearly erroneous if substantial evidence does not support it; if the district court misapprehended the effect of the evidence; or if, after reviewing the record, this Court is left with a definite and firm conviction that the district court made a mistake. *In re Custody of C.F.,* 2001 MT 19, ¶ 11, 304 Mont. 134, ¶ 11, 18 P.3d 1014, ¶ 11.

## DISCUSSION

### ISSUE 1

¶22 Did the District Court err when it denied Spooner's motion to dismiss?

¶23 Spooner contends that Maner's evidence did not prove a *prima facie* case for wrongful attachment. It maintains that Maner offered no evidence of malicious attachment and that Spooner was entitled to an involuntary dismissal of the claim as a matter of law.

¶24 To prevail on a counterclaim for wrongful attachment, a claimant must prove the responding party: 1) lacked probable cause; 2) acted with malice; 3) interfered with the claimant's rights to that property; 4) the attachment terminated in the claimant's favor; and 5) the claimant was damaged. *See Montgomery v. Hunt* (1987), 227 Mont 279, 738 P.2d 887; *Brown v. Guaranty Estates Corp.* (1954 N.C.) 80 S.E.2d 645. A lack of probable cause exists when, at the time of the attachment, the plaintiff did not have reason to believe that

7

the factors necessary to sustain an attachment were present. 6 Am. Jur. 2d *Attachment and Garnishment* § 607 (1999). Malice requires a willful disregard for the rights of another with an improper motive, and may be inferred from a lack of probable cause. *Mosback v. Smith Bros. Sheep Co.* (1922), 65 Mont 42, 46, 210 P. 910, 912; 6 Am. Jur. 2d *Attachment and Garnishment* § 606.

¶25 Spooner had to have been entitled to payment from Maner to have probable cause for the issuance of a writ of attachment against Maner's property. Spooner's Affidavit in Support of Prejudgment Attachment alleges that it was entitled to payment from Maner pursuant to the Plum Creek agreement and for rental fees for using Spooner's Crawler. In *Spooner I*, ¶ 38, we held that Spooner was deemed to have admitted that it was not entitled to any money from the Plum Creek agreement and not entitled to any rental fees associated with Maner's use of the Crawler. That admission could be construed to establish that Spooner lacked the requisite probable cause for seeking a writ of prejudgment attachment.

¶26 There was also testimony which suggested that Spooner knew where Maner could be contacted at all times relevant to this dispute. However, the evidence indicates that Spooner did not attempt to contact Maner to submit a bill, request payment, or discuss any concerns about the Plum Creek agreement. Instead, Spooner filed a lien against, and later attached, Maner's skidder with the intent to bid on it at the sheriff's sale. Maner testified Spooner disabled his skidder and it was inoperable when he regained possession. These actions prevented Maner from seeking new work, damaged his reputation, and interfered with his right to use and possess his skidder. When the testimony and evidence presented by Maner

8

is construed in a light most favorable to him, the facts are sufficient to establish that Spooner acted with malice. Therefore we, conclude that the District Court did not err when it denied Spooner's motion to dismiss.

ISSUE 2

¶27 Was the District Court clearly erroneous when it found that Spooner wrongfully and maliciously attached Maner's skidder?

¶28 Spooner contends that the District Court erred when it found that Spooner acted maliciously and without probable cause because the evidence does not support such a finding. It maintains that the District Court's findings of fact are vague and do not support the conclusions of law.

¶29 The District Court made the following findings of fact:

19. There was an insufficient factual and legal basis for seeking the prejudgment writ of attachment in this case.

20. Spooner had already disabled the equipment which prevented Maner from taking them so the writ was unnecessary.

21. Spooner's tactics and misuse of the legal process and mechanics lien was wrongful, malicious and excessive given the real issues in dispute and available financial resources.

. . . .

36. Spooner wrongfully and maliciously attached Maner's skidder.

¶30 Findings 19 and 20 indicate that the District Court found a lack of factual basis and necessity for seeking a writ of prejudgment attachment. Finding 21 refers to Spooner's tactics, abuse of the legal process, and the mechanic's lien as evidence of malice. These

9

facts support the court's finding that Spooner wrongfully and maliciously attached Maner's skidder. The court's findings are not vague and it did not confuse the issues. Moreover, these facts support the conclusions of law made by the District Court.

¶31 Next, we must determine whether the District Court's findings are supported in the record. Maner testified at trial that he did not owe Spooner any money for the Plum Creek agreement and we held that Spooner was deemed to have admitted the same in *Spooner I*. Furthermore, Spooner did not send a bill to Maner's accountant for the alleged debt in spite of the fact that when it had done so in the past it had been paid. Spooner did not contact Maner to discuss its concerns, however, the record indicates that Maner had a listed phone number, Mr. Spooner knew how to contact him by radio and he knew where Maner lived.

¶32 The record indicates that there was little or no factual basis for Mr. Spooner's sworn statement that Maner's finances were "so bad that I sincerely fear he will pick up and leave the court's jurisdiction. . . ." According to his own testimony, Mr. Spooner took no steps to investigate the truth about Maner's finances and relied solely upon third party statements.

¶33 Maner was not personally served with notice of the mechanic's lien and sheriff's sale because Spooner sent the notice to an address where it was known Maner no longer resided. Maner only learned of the sale through a business associate who saw the public notice in the paper. In fact, Spooner intended to bid on the skidder at the sheriff's sale and would have done so if Maner had not filed an action in justice court. After obtaining the writ of attachment, Mr. Spooner approached Plum Creek Timber, offered to complete the Plum Creek agreement, and suggested that Maner was incapable of finishing the job. Without his

skidder, Maner could neither finish the Plum Creek agreement timber harvest, nor could he contract new work.

¶34 Finally, there were numerous inconsistencies between Mr. Spooner's testimony on direct examination, his testimony on cross-examination, and his deposition from 1997 with regard to the facts alleged. Consequently, even by his own testimony, it is not clear what he did and did not do during this dispute.

¶35 In non-jury trials the credibility of witnesses and the weight of the evidence given to their testimony, and the evidence presented at trial, is a matter left to the discretion of the district court. *Albrecht*, ¶ 48. We hold the same is true for evidentiary hearings. Circumstantial evidence is evidence that tends to establish a fact by proving another and which, does not of itself conclusively establish that fact but allows an inference or presumption of its existence. Section 26-1-102, MCA.

¶36 The record indicates that Maner established circumstantial evidence of an improper motive for attaching Maner's skidder and direct evidence that Spooner's affidavit was filed with reckless disregard for the facts and without probable cause. We conclude that the District Court did not err when it found that Spooner acted maliciously and without probable cause.

¶37 Spooner also argues that Finding of Fact number 18 indicates that the District Court shifted the burden of proof from Maner to Spooner with regard to the wrongful attachment claim. Finding of Fact 18 states:

> Of the 11 paragraphs in the affidavit of support of prejudgment attachment, Spooner offered insufficient proof at the hearing to support any of the

11

allegations in the affidavit except the existence of a dispute between the parties.

¶38 The record indicates that Maner presented both circumstantial evidence and direct evidence during the hearing that established Spooner wrongfully attached his skidder. Finding 18 indicates that Spooner was unable to refute the evidence that Maner presented at the hearing. We conclude that the burden of proof was not impermissibly shifted to Spooner.

## ISSUE 3

¶39 Does a supersedeas bond remain in effect when the case is remanded to the district court following a successful appeal?

¶40 Maner argues that the supersedeas bond that Spooner posted on appeal from the District Court's award of summary judgment in *Spooner I* remained effective on remand. Consequently, he claims that he is entitled to satisfy his judgment from that bond.

¶41 This is an issue of first impression for this Court. Consequently, we look to other jurisdictions for guidance. We find the relevant case law clearly establishes that a surety remains in effect when the question on remand is the amount of damages and not whether a party is entitled to damages. *Tennessee Valley Auth. v. Atlas Mach. & Iron Works* (1986 4th Cir.), 803 F.2d 794, 799; *Beatrice Foods Co. v. New England Printing* (1991 Fed. Cir) 930 F.2d 1572, 1576. However, if a question of liability, or whether a party is entitled to damages remains after an appeal, the bond may lapse. *Beatrice Foods Co.,* 930 F.2d at 1576. Maner misapprehends the meaning of *Tennessee Valley*, which held that when liability has been affirmed on appeal, and the only issue on remand is the amount of damages, the surety

remains in effect.

¶42　In this case, the District Court initially granted summary judgment on all issues including Maner's claim for wrongful attachment against Spooner. Patricia Ryan posted a supersedeas bond on behalf of Spooner for the damages that the District Court awarded. Ryan agreed that the bond would satisfy the judgment if the District Court's judgment was affirmed on appeal. In *Spooner I,* this Court reversed the District Court's wrongful attachment judgment and remanded the issue for further hearings on the merits of that claim. The judgment for which the bond was posted was not affirmed. Consequently, the bond posted for that appeal should have been permitted to lapse.

¶43　For the foregoing reasons, we affirm the judgment of the District Court. We further conclude that the supersedeas bond posted by Ryan for the appeal in *Spooner I* must be permitted to lapse.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ JAMES C. NELSON

13